# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

HOMES & LAND AFFILIATES, LLC,    )

)

         *Plaintiffs,*      )

)    Case No.: *4:11cv649 - RH/ bcs*

   vs.              )

)

VNF MEDIA GROUP LLC (f/k/a VNF    )
PUBLISHING GROUP, LLC), a New    )
York Limited Liability Company; VNF  )
ENTERPRISES, LLC, a New York    )
Limited Liability Company;        )
MISTERMAN REALTY, LLC, a New    )
York Limited Liability Company;    )
FRONT & CENTER, INC., a New York  )
Company; VICTOR M. GOMEZ, an    )
individual; JOSEPHINE GOMEZ, an   )
individual; and FRANK SCIRE; an    )
individual;               )

)

        *Defendants.*     )

)

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Homes & Land Affiliates, LLC ("HLA"), by its attorneys, as and for its Complaint for Injunctive Relief and Damages for trademark infringement and breach of contract against Defendants VNF Media Group LLC (f/k/a VNF Publishing Group, LLC) ("VNF"), VNF Enterprises, LLC ("VNF Enterprises"); Misterman Realty, LLC ("Misterman"); Front & Center, Inc. ("Front & Center"); Victor M. Gomez ("V. Gomez"), Josephine Gomez ("J. Gomez"), and Frank Scire ("Scire") (collectively, "Defendants"), states as follows:

## PARTIES

1.    Plaintiff HLA (f/k/a Homes & Land Publishing Ltd.) is a Delaware limited liability company with its principal place of business in Tallahassee, Florida. HLA is the world's largest franchisor of independently owned and operated real estate marketing publishing businesses, with more than 250 licenses/franchises worldwide, offering advertising and

marketing services to the real estate industry through local editions of HLA's real estate publications, direct mail services and HLA's authorized website under the names "HOMES & LAND," HOMESANDLAND.COM," "ESTATES & HOMES," "HOME GUIDE," and "RENTAL GUIDE."

2.      VNF is a New York limited liability company with its principal place of business in Brooklyn, New York.  VNF is a former HLA franchisee.

3.      VNF Enterprises is a New York limited liability company with its principal place of business in Brooklyn, New York.  VNF Enterprises owns 100% of VNF.

4.      Misterman is a New York limited liability company with its principal place of business in Brooklyn, New York.  Misterman owns 50% of VNF Enterprises.

5.      Front & Center is a New York company with its principal place of business in Brooklyn, New York.  Front & Center is a company being operated by V. Gomez in connection with the distribution of real estate advertising magazines.

6.      V. Gomez is a citizen and resident of the state of New York.  V. Gomez owns 50% of Misterman and is a guarantor of VNF's obligations under each of the franchise agreements between HLA and VNF.

7.      J. Gomez is a citizen and resident of the state of New York.  J. Gomez owns 50% of Misterman and is a guarantor of VNF's obligations under each of the franchise agreements between HLA and VNF.

8.      Scire is a citizen and resident of the state of New York.  Scire owns 50% of VNF Enterprises and is a guarantor of VNF's obligations under each of the franchise agreements between HLA and VNF.

2

## JURISDICTION AND VENUE

9.      This Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy. This Court also has original subject matter jurisdiction of this action under 28 U.S.C. § 1332, in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

10.     This Court has personal jurisdiction over VNF by virtue of, among other things, section 12.2 of each of the four separate franchise agreements by and between HLA and VNF, described in more detail below, pursuant to which VNF has consented to personal jurisdiction in the "Federal District Court sitting in Tallahassee, Florida."

11.     This Court has personal jurisdiction over VNF Enterprises by virtue of its status as the sole member of VNF and, among other things, section 12.2 of each of the four separate franchise agreements by and between HLA and VNF, described in more detail below, pursuant to which VNF has consented to personal jurisdiction in the "Federal District Court sitting in Tallahassee, Florida."

12.     This Court has personal jurisdiction over Misterman by virtue of its status as a Member of VNF Enterprises, the sole member of VNF, and, among other things, section 12.2 of each of the four separate franchise agreements by and between HLA and VNF, described in more detail below, pursuant to which VNF has consented to personal jurisdiction in the "Federal District Court sitting in Tallahassee, Florida."

13.     This Court has personal jurisdiction over Front & Center by virtue of its status as a party in active concert or participation with Defendants in the operation of a competing real estate advertising business in at least one of Defendants' former franchise territories in violation of the terms of the franchise agreements between HLA and VNF.

14.     This Court has personal jurisdiction over V. Gomez, J. Gomez, and Scire by virtue of, among other things, the terms of the four guaranties, described in more detail below, pursuant to which V. Gomez, J. Gomez, and Scire guaranteed VNF's obligations and covenants under the franchise agreements entered into between HLA and VNF.

15.     Venue is proper in this District pursuant to section 12.2 of the franchise agreements, inasmuch as that provision contains an express waiver by VNF of any objection to venue in this District.

## SUMMARY OF THE ACTION

16.     HLA entered into four substantially identical franchise agreements with VNF for the operation of HLA franchises in New York and Connecticut under the names *Homes & Land of Staten Island, Homes & Land of Brooklyn North, Homes & Land of Brooklyn South, and Homes & Land of Fairfield County and Surrounding Areas*. V. Gomez, J. Gomez, and Scire personally guaranteed VNF's obligations under each of the franchise agreements.

17.     During the course of this contractual relationship, VNF failed to remit specific payments, required pursuant to the terms of the franchise agreements, to HLA, and, as a result, HLA terminated the franchise agreements between itself and VNF.

18.     As of the date of termination, Defendants owed HLA $100,902.29 in past due fees.

4

19.     Upon termination of the franchise agreements, Defendants were required to comply with certain post-termination obligations including, but not limited to, paying HLA all monies due and owing under the franchise agreements, returning HLA's confidential information, and refraining from operating competing real estate advertising businesses within a defined geographic area.

20.     Despite the termination of the franchise agreements, and despite their covenant not to compete, Defendants are operating a competing real estate advertising business, offering and selling a product similar to that which HLA offers, in at least one of VNF's former franchise territories, under marks and trade dress confusingly similar to that used by HLA.

21.     HLA seeks, among other things, a preliminary and permanent injunction (i) enjoining Defendants' wrongful and unlawful use of marks confusingly similar to HLA's federally registered trademarks; (ii) enjoining Defendants' wrongful and unlawful competition; and (iii) enforcing the post-termination obligations set forth in the franchise agreements entered into by HLA and VNF.  HLA also seeks damages for certain Defendants' wrongful conduct, unpaid fees, as well as attorneys' fees and costs it has incurred and will incur in prosecuting this action, as provided by statute and the parties' written agreements.

## THE HLA SYSTEM AND MARKS

22.     HLA grants franchises to qualified persons to own and operate HLA franchises for specific territories and licenses its authorized franchisees to use its proprietary tradenames, trade and service marks, logo, know-how, and expertise in connection therewith (the "HLA System") pursuant to a written franchise agreement.  These and other features of the HLA System comprise HLA's distinctive "trade dress" used in the advertising and marketing of real estate services.

5

23.    HLA franchisees solicit advertisements in their specific geographic areas from the real estate industry for inclusion in periodical publications which are distributed at no charge through indoor and outdoor racks to the public.   HLA franchisees also offer advertising and marketing services to the real estate industry through HLA's authorized website and through direct mail services.

24.    The HLA system includes certain confidential information consisting of, among other things, methods, techniques, specifications, procedures, information, systems and knowledge of an expertise in the development and operation of HLA businesses (the "Confidential Information").

25.    HLA has the exclusive right to sublicense the use of certain federally registered proprietary trade names and service marks, logos, and derivations thereof (the "HLA Marks"). The HLA Marks include, but are not limited to the following:

| MARK | REGISTRATION DATE | NUMBER |
|---|---|---|
| Homes & Land | November 8, 1983 | 1,256,835 |
| Homes & Land (logo) | March 9, 1993 | 1,756,790 |
| Estates & Homes | December 21, 1999 | 2,301,653 |
| HomesAndLand.com | July 29, 2003 | 2,743,516 |

26.    HLA   uses   or   has   used   the   words   "HOMES   &   LAND," "HOMESANDLAND.COM," "ESTATES & HOMES," "HOME GUIDE," and "RENTAL GUIDE" among others, as abbreviations of its brand names.

27.    The HLA Marks serve to identify the source, origin and sponsorship of HLA businesses and the products and services they offer, and to distinguish those real estate

6

advertising businesses, products and services from those established, made, and offered by others.

28.     The HLA Marks are registered on the Principal Register of the United States Patent and Trademark Office.  The registrations of the HLA Marks, and all other registrations for trademarks or service marks which are part of the HLA System, have always been and continue in full force and effect, and all those eligible are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Each registration set forth above is *prima facie* evidence of the validity of the registration of the HLA Marks, of HLA's ownership of those marks, and of HLA's exclusive right to use those marks in commerce on the service and goods listed above, as provided in 15 U.S.C. § 1057(b) and § 1115(a).

29.     HLA has given notice to the public of the registration of the HLA Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that HLA remains the exclusive user of the HLA Marks.

30.     HLA has continuously used the HLA Marks in interstate commerce in connection with the promotion, operation and franchising of HLA businesses and the promotion and sale of the products and services they offer throughout the United States, including the States of New York and Connecticut, since the dates of their registration.

31.     HLA has the exclusive right to use and license the HLA Marks and derivations thereof.  Pursuant to written franchise agreements entered into by and between HLA and its authorized and approved franchisees, HLA grants franchises to qualified persons to own and operate a HLA business using the HLA Marks, but only in such a manner and at such locations as are expressly authorized by HLA.

7

32.    HLA has expended substantial sums of money and other resources in developing, promoting, and establishing the HLA Marks and System in the State of Florida and elsewhere in the United States.

33.    As a result of HLA's efforts, customers have come to understand the HLA System as a unique and distinctive method for the operation of real estate marketing businesses. The services provided by HLA franchisees using the HLA System and Marks have become widely known for their excellence, uniformity and high quality, and have enjoyed a high degree of popularity, customer acceptance and good will. As a result of this quality image and the use of the HLA System and Marks, customers have come to understand the HLA System and Marks as distinctive of the services and products provided by HLA and its franchisees.

## THE PARTIES' RELATIONSHIP

34.    HLA entered into four substantially identical franchise agreements with VNF for the operation of HLA franchises in New York and Connecticut.

### The Staten Island Agreement

35.    On or about September 12, 2008, HLA entered into a franchise agreement with VNF for the license and operation of a HLA franchise (*Homes & Land of Staten Island*) within a defined geographic area identified as: "in the State of New York, the Borough of Staten Island and the Borough of Brooklyn" (the "Staten Island Agreement").

36.    On or about September 12, 2008, V. Gomez, J. Gomez, and Scire entered into a guaranty with HLA, personally guaranteeing VNF's performance and obligations under the Staten Island Agreement ("Staten Island Guaranty").

8

37.     Pursuant to the terms of the Staten Island Guaranty, V. Gomez, J. Gomez, and Scire guaranteed that VNF would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the [Staten Island] Agreement."

38.     Pursuant to the terms of the Staten Island Guaranty, V. Gomez, J. Gomez, and Scire agreed, among other things, that they were "personally . . . bound by, and personally liable for the breach of, each and every provision in the [Staten Island] Agreement."

39.     Pursuant to the terms of the Staten Island Guaranty, therefore, V. Gomez, J. Gomez, and Scire agreed, among other things, that they would personally comply with all of VNF's post-termination obligations, including the covenant not to compete.

### The Connecticut Agreement

40.     On or about February 27, 2009, HLA entered into a franchise agreement with VNF for the license and operation of a HLA franchise (*Homes & Land of Fairfield County and Surrounding Areas*) within a defined geographic area identified as:   "Fairfield County, Connecticut" (the "Connecticut Agreement").

41.     On or about February 27, 2009, V. Gomez, J. Gomez, and Scire entered into a guaranty with HLA, personally guaranteeing VNF's performance and obligations under the Connecticut Agreement ("Connecticut Guaranty").

42.     Pursuant to the terms of the Connecticut Guaranty, V. Gomez, J. Gomez, and Scire guaranteed that VNF would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the [Connecticut] Agreement."

43.     Pursuant to the terms of the Connecticut Guaranty, V. Gomez, J. Gomez, and Scire agreed, among other things, that they were "personally . . . bound by, and personally liable for the breach of, each and every provision in the [Connecticut] Agreement."

9

44.    Pursuant to the terms of the Connecticut Guaranty, therefore, V. Gomez, J. Gomez, and Scire agreed, among other things, that they would personally comply with all of VNF's post-termination obligations, including the covenant not to compete.

### The North Brooklyn Agreement

45.    On or about March 23, 2009, HLA entered into a franchise agreement with VNF for the license and operation of a HLA franchise (*Homes & Land of Brooklyn North*) within a defined geographic area identified as: "in the State of New York, that portion of the Borough of Brooklyn that is bordered on the north by Linden Blvd. from the Queens border on the east going west to Caton Ave. and continuing to Fort Hamilton Parkway, and then to 36th St. and continuing northwest along 36th St. and straight to the Upper New York Bay" (the "North Brooklyn Agreement").

46.    On or about March 23, 2009, V. Gomez, J. Gomez, and Scire entered into a guaranty with HLA, personally guaranteeing VNF's performance and obligations under the North Brooklyn Agreement ("North Brooklyn Guaranty").

47.    Pursuant to the terms of the North Brooklyn Guaranty, V. Gomez, J. Gomez, and Scire guaranteed that VNF would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the [North Brooklyn] Agreement."

48.    Pursuant to the terms of the North Brooklyn Guaranty, V. Gomez, J. Gomez, and Scire agreed, among other things, that they were "personally . . . bound by, and personally liable for the breach of, each and every provision in the [North Brooklyn] Agreement."

49.    Pursuant to the terms of the North Brooklyn Guaranty, therefore, V. Gomez, J. Gomez, and Scire agreed, among other things, that they would personally comply with all of VNF's post-termination obligations, including the covenant not to compete.

10

### The South Brooklyn Agreement

50.     On or about March 23, 2009, HLA entered into a franchise agreement with VNF for the license and operation of a HLA franchise, identified as *Homes & Land of Brooklyn South*, within a defined geographic area described as: "in the State of New York, that portion of the Borough of Brooklyn that is bordered on the south by Linden Blvd. from the Queens border on the east going west to Caton Ave. and continuing to Fort Hamilton Parkway, and then to 36th St. and continuing northwest along 36th St. and straight to the Upper New York Bay" (the "South Brooklyn Agreement").

51.     On or about March 23, 2009, V. Gomez, J. Gomez, and Scire entered into a guaranty with HLA, personally guaranteeing VNF's performance and obligations under the South Brooklyn Agreement ("South Brooklyn Guaranty").

52.     Pursuant to the terms of the South Brooklyn Guaranty, V. Gomez, J. Gomez, and Scire guaranteed that VNF would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the [South Brooklyn] Agreement."

53.     Pursuant to the terms of the South Brooklyn Guaranty, V. Gomez, J. Gomez, and Scire agreed, among other things, that they were "personally . . . bound by, and personally liable for the breach of, each and every provision in the [South Brooklyn] Agreement."

54.     Pursuant to the terms of the South Brooklyn Guaranty, therefore, V. Gomez, J. Gomez, and Scire agreed, among other things, that they would personally comply with all of VNF's post-termination obligations, including the covenant not to compete.

### DEFENDANTS' DEFAULTS AND THE TERMINATION
### OF THE FRANCHISE AGREEMENTS

55.     Pursuant to the terms of the franchise agreements, VNF was obligated to pay certain fees to HLA, including franchise fees, royalty fees, printing charges, among others.

11

56.     By letter dated October 10, 2011, HLA sent to V. Gomez and Scire a notice of certain defaults ("Notice of Default") and informed V. Gomez and Scire that they were in default by reason of their: (1) failure to pay past due balances due and owing to HLA pursuant to section 3 of the franchise agreements made between HLA and VNF, and (2) failure to produce magazines pursuant to section 5 of the franchise agreements made between HLA and VNF. The Notice of Default also informed V. Gomez and Scire that, pursuant to section 5.2 of the franchise agreements, they were required to use specified printers for the production of their magazines.

57.     By letter dated October 11, 2011, sent by V. Gomez on behalf of VNF to HLA, V. Gomez acknowledged the defaults and agreed to: (1) cease and desist from producing any magazines other than at a printer designated by HLA, and (2) produce subsequent issues of magazines as requested by HLA. The letter further set out a payment plan by which VNF would fulfill its obligations to remit past amounts due and owing to HLA.

58.     By letter dated October 11, 2011, sent by HLA to V. Gomez and Scire, HLA acknowledged the agreement proposed by VNF and attached a proposed schedule for payment.

59.     VNF failed to cure the defaults referenced in the Notice of Default.

60.     By letter dated December 12, 2011, HLA terminated the franchise agreements effective immediately ("Termination Notice").

61.     The Termination Notice demanded, among other things, that VNF: (1) pay HLA all past amounts due and owing; (2) cease holding themselves out as being affiliated with HLA; and (3) comply with all post-termination obligations under the franchise agreements.

62.     As of December 12, 2011, VNF owed HLA $100,902.29 in past due fees.

63.     The Termination Notice also advised VNF of its post-termination obligations as set forth in the franchise agreements.

12

**DEFENDANTS' BREACH OF THEIR POST-TERMINATION OBLIGATIONS**

64.     Despite VNF's contractual obligations pursuant to section 7.3 of the franchise agreements, VNF, and/or those in active concert or participation with it, is engaged in a competing real estate advertising business within at least one of its former territories under the franchise agreements.

65.     Defendants are operating a Competitive Business as defined in section 13.5 of the franchise agreement and are producing a competing real estate advertising magazine under the name "*Homes, Cottages & Estates*" in at least one of their former franchise territories and intend to distribute them in the same manner they previously distributed their *Homes & Land of Staten Island, Homes & Land of Brooklyn North, Homes & Land of Brooklyn South, and Homes & Land of Fairfield County and Surrounding Areas* magazines.

66.     In anticipation of publishing *Homes, Cottages & Estates*, Defendants distributed a notice soliciting advertisements in which they state the inaugural publication will be January 2, 2012 and list various deadlines for submitting materials along with rates.  In this notice, Defendants state: "Homes and Land of Staten Island is now Homes, Cottages & Estates." Moreover, this notice touts *Homes, Cottages & Estates* as "very affordable and no other advertising platform on Staten Island can match our value."

67.     *Homes, Cottages & Estates* appears to be set on using a nearly identical format under which Defendants operated their franchised HLA publishing business, including the use of marks and trade dress that are confusingly similar to those used in their operation of *Homes & Land of Staten Island, Homes & Land of Brooklyn North, Homes & Land of Brooklyn South, and Homes & Land of Fairfield County and Surrounding Areas.*

13

68.     Despite their obligations under the guaranties, V. Gomez, J. Gomez, and Scire have failed to comply with VNF's post-termination obligations, including, without limitation, the covenants not to compete.

69.     Defendants' failure to comply with their covenants not to compete hinders HLA's ability to provide real estate advertising services to existing clients and threatens to destroy HLA's relations with its customers in VNF's former territories under the franchise agreements.

70.     Despite VNF's contractual obligations under the franchise agreements, VNF has failed to pay all monies owed to HLA pursuant to the franchise agreements.

71.     Despite their obligations under the guaranties, V. Gomez, J. Gomez, and Scire have failed to pay the monies owed to HLA pursuant to the franchise agreements.

## HLA'S ADDITIONAL RIGHTS UNDER THE FRANCHISE AGREEMENTS

72.     Pursuant to section 12.3 of the franchise agreements, VNF expressly acknowledged HLA's right to obtain temporary and preliminary injunctive relief in the event of VNF's violation of the post-termination covenant not to compete. Additionally, in section 12.3 of the franchise agreements, VNF expressly acknowledged HLA's right to obtain temporary and preliminary injunctive relief in the event of VNF's trademark infringement post-termination.

73.     Pursuant to section 12.4 of the franchise agreements, VNF expressly agreed that "[t]he prevailing party in any judicial or arbitration proceeding relating to this Agreements . . . will be awarded its costs and expenses incurred in connection with such proceedings, including reasonable attorneys' fees."

## COUNT I
### Federal Trademark Infringement
### (Section 32 of the Lanham Act)

74.     HLA realleges and incorporates herein by reference each and every allegation

14

contained in the preceding paragraphs as if fully set forth herein.

75.     Section 32 of the Lanham Act, 15 U.S.C. §1114(1)(a), provides in relevant part that "[a]ny person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause by mistake, or to deceive...shall be liable in a civil action by the registrant...."

76.     Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the HLA Marks, and Defendants' sale, offering for sale, distribution or advertising of goods and services under the HLA Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(l).

77.     As a direct and proximate result of Defendants' infringement, HLA has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

78.     Pursuant to section 12.3 of the franchise agreements, VNF agreed that HLA may obtain temporary and preliminary injunctive relief to enforce HLA's exclusive rights in the HLA Marks.

79.     HLA has no adequate remedy at law because the HLA Marks are unique and represent to the public HLA's identity, reputation, and goodwill, such that damages alone cannot fully compensate HLA for Defendants' misconduct. Moreover, pursuant to section 12.3 of the franchise agreements, VNF expressly agreed that any use of the HLA Marks in violation of the franchise agreements constitutes irreparable injury for which no adequate remedy at law is

15

available.

80.     Unless enjoined by the Court, Defendants will continue to use and infringe the HLA Marks, to HLA's irreparable injury. This threat of future injury to HLA's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the HLA Marks, or any designs similar thereto, and to ameliorate and mitigate HLA's injuries.

## COUNT II
### Federal Trade Dress Infringement
### (Section 43(a) of the Lanham Act)

81.     HLA realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82.     Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), provides in relevant part that "[a]ny person who, on or in connection with any goods or services...uses in commerce any word, term, name, symbol...or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation...or as to the origin, sponsorship, or approval of...goods [or] services...shall be liable in a civil action...."

83.     HLA's trade dress is inherently distinctive and/or has acquired distinctiveness through secondary meaning.

84.     HLA's trade dress is non-functional.

85.     Defendants' intentional and unauthorized acts of sale, offering for sale, distribution or advertising of goods and services using designs and layouts confusing similar to HLA's trade dress, constitutes trade dress infringement, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties,

16

and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties'
goods, services and commercial activities, all in violation of Section 43(a) of the Lanham Act, 15
U.S.C § 1125(a).

86.    As a direct and proximate result of Defendants' trade dress infringement, HLA
has been and is likely to be substantially injured in its business, including its goodwill and
reputation, resulting in lost revenues and profits and diminished goodwill.

87.    HLA has no adequate remedy at law because the HLA's trade dress is inherently
distinctive and/or has acquired distinctiveness through secondary meaning. HLA's trade dress
represents to the public HLA's identity, reputation, and goodwill, such that damages alone
cannot fully compensate HLA for Defendants' misconduct.

88.    Unless enjoined by the Court, Defendants will continue to use and infringe upon
HLA's trade dress, to HLA's irreparable injury. This threat of future injury to HLA's business
identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use
of the HLA trade dress, or any designs similar thereto, and to ameliorate and mitigate HLA's
injuries.

**COUNT III**
**Federal Unfair Competition**
**(Section 43(a) of the Lanham Act)**

89.    HLA realleges and incorporates herein by reference each and every allegation
contained in the preceding paragraphs as if fully set forth herein.

90.    Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), provides in relevant part
that "[a]ny person who, on or in connection with any goods or services...uses in commerce any
word, term, name, symbol...or any false designation of origin, false or misleading description of
fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause

17

mistake, or to deceive as to affiliation...or as to the origin, sponsorship, or approval of...goods [or] services...shall be liable in a civil action...."

91.     Defendants' acts of sale, offering for sale, distribution or advertising of goods and services under the HLA Marks and/or trade dress, or any designs similar thereto, constitutes unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C § 1125(a).

92.     As a direct and proximate result of Defendants' unfair competition, HLA has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

93.     Pursuant to section 12.3 of the franchise agreements, VNF agreed that HLA may obtain temporary and preliminary injunctive relief to enforce HLA's exclusive rights in the HLA Marks.

94.     HLA has no adequate remedy at law because the HLA Marks and trade dress are unique and inherently distinctive and/or have acquired distinctiveness through secondary meaning and represent to the public HLA's identity, reputation, and goodwill, such that damages alone cannot fully compensate HLA for Defendants' misconduct. Moreover, pursuant to section 12.3 of the franchise agreements, VNF expressly agreed that any use of the HLA Marks in violation of the franchise agreements constitutes irreparable injury for which no adequate remedy at law is available.

95.     Unless enjoined by the Court, Defendants will continue to use and infringe the

HLA Marks, to HLA's irreparable injury. This threat of future injury to HLA's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the HLA Marks and to ameliorate and mitigate HLA's injuries.

**COUNT IV**
**Federal Trademark Dilution**
**(Section 42(c) of the Lanham Act)**

96.    HLA realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

97.    Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), provides in relevant part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use beings after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this section."

98.    The HLA Marks have become "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

99.    The use of the HLA Marks by Defendants in connection with real estate advertising services, after the HLA Marks became famous, have caused and will continue to cause dilution and disparagement of the distinctive quality of the HLA marks, and have lessened and will continue to lessen the capacity of the HLA Marks to identify and distinguish the goods and services of HLA, all in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

100.    Defendants willfully intended to trade on the reputation of HLA or to cause dilution of the HLA Marks.

101.    As a direct and proximate result of Defendants' violation of Section 43(c) of the

19

Lanham Act, HLA has been seriously damaged and, unless Defendants are restrained from future violations of HLA's rights with respect to the HLA Marks, will continue to be so damaged.

102.    Pursuant to section 12.3 of the franchise agreements, VNF agreed that HLA may obtain temporary and preliminary injunctive relief to enforce HLA's exclusive rights in the HLA Marks.

103.    HLA has no adequate remedy at law because the HLA Marks are unique and represent to the public HLA's identity, reputation, and goodwill, such that damages alone cannot fully compensate HLA for Defendants' misconduct.  Moreover, pursuant to section 12.3 of the franchise agreements, VNF expressly agreed that any use of the HLA Marks in violation of the franchise agreements constitutes irreparable injury for which no adequate remedy at law is available.

104.    Unless enjoined by the Court, Defendants will continue to use and infringe the HLA Marks, to HLA's irreparable injury.  This threat of future injury to HLA's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the HLA Marks and to ameliorate and mitigate HLA's injuries.

## COUNT V
### Breach of Contract – Injunctive Relief

105.    HLA realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

106.    Pursuant to section 7.3 of the franchise agreements, VNF agreed, among other things, not to directly or indirectly own a legal or beneficial interest in, or render services or give advice to, any Competitive Business as defined in section 13.5 of the franchise agreements for a period of one year, within the former territories, and within an area 100 miles outside of the

20

boundaries of the territories or within 100 miles of any other HLA franchise territory then operational, from the date of termination of the franchise agreements.

107.    Pursuant to section 12.3 of the franchise agreements, VNF expressly acknowledged HLA's right to obtain temporary and preliminary injunctive relief in the event of VNF's violation of the post-termination covenant not to compete contained in section 7.3.

108.    VNF has violated the covenant not to compete through its involvement in a Competitive Business and its anticipated publication of a real estate advertising magazine identified as "*Homes, Cottages & Estates.*"

109.    Pursuant to the terms of the guaranties, V. Gomez, J. Gomez, and Scire, agreed, among other things, that they would personally comply with all of VNF's post-termination obligations, including the covenant not to compete.

110.    Defendants' failure to comply with their covenant not to compete is a material breach of the franchise agreements.

111.    The covenant not to compete is not overly broad or overlong and is reasonably necessary to protect HLA's legitimate business interests, to wit: HLA's valuable confidential business information, its substantial relationships with specific prospective or existing customers, the customer and client goodwill associated with the designated trade area of Defendants' terminated franchise agreements, its extraordinary and specialized training provided to Defendants, and the integrity of its franchise system.

112.    HLA has fully performed all of its obligations under the franchise agreements.

113.    As a direct and proximate result of Defendants' breach, HLA has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

114.    HLA has no adequate remedy at law.  Damages, including harm to its goodwill and loss of customers, are difficult to quantify, and therefore, money damages alone cannot adequately, completely, and fully compensate HLA for the harm caused by Defendants' misconduct.

115.    The foregoing acts of Defendants have caused HLA irreparable harm, and unless enjoined, the acts of Defendants alleged herein will continue to do so.

## COUNT VI
## Breach of Contract – Unpaid Fees

116.    HLA realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

117.    Pursuant to section 3 of the franchise agreements, VNF was obligated to remit certain fees to HLA, including franchise fees, royalty fees, printing charges, among others.

118.    Despite its obligation to do so, VNF has not paid HLA the full amounts due and owing under the franchise agreements.

119.    Pursuant to the terms of the guaranties, V. Gomez, J. Gomez, and Scire, agreed, among other things, that they would personally comply with all of VNF's obligations, including payment of past due fees.

120.    The failure of VNF to pay HLA all amounts due and owing under the franchise agreements constitutes a breach of the franchise agreements and has damaged HLA in the amount of at least $100,902.29.

## COUNT VII
## Breach of Guaranties

121.    HLA realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

22

122.    Pursuant to the terms of the guaranties, V. Gomez, J. Gomez, and Scire agreed, among other things, that upon a default under the franchise agreements, they would make each payment and perform each obligation required of VNF under the franchise agreements between HLA and VNF.

123.    Despite their obligations to do so, V. Gomez, J. Gomez, and Scire have failed to make any payments or perform or cause VNF to perform each obligation required pursuant to the franchise agreements with HLA.

124.    Pursuant to the guaranties, V. Gomez, J. Gomez, and Scire are liable to HLA for all of the outstanding amounts due and owing to HLA under the franchise agreements.

## PRAYER FOR RELIEF

**WHEREFORE**, HLA respectfully prays for the following relief against Defendants:

1. As to Counts I, II, III, IV, and V enter a preliminary and permanent injunction enjoining Defendants and their agents, servants, employees, representatives, attorneys and/or affiliates, and all those who act in concert or participation with them from:

    a.  Using the HLA Marks or any trademark, service mark, logo or trade name that is confusingly similar to the HLA Marks;

    b.  Otherwise infringing the HLA Marks or using any similar designation, alone or in combination with any other components;

    c.  Using any trade dress that is confusingly similar to that used by HLA;

    d.  Otherwise infringing the trade dress used by HLA;

    e.  Passing off any of their products or services as those of HLA or its authorized franchisees;

    f.  Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their businesses, products or services;

    g.  Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with HLA and its franchisees or any of HLA's products or services; and

23

     h.  Being associated, either directly or indirectly, with a Competitive Business, including *Homes, Cottages and Estates* within a 100 mile radius of the boundaries of the licensed territory of any of the franchise agreements or any other real estate for sale advertising business currently operational until December 12, 2012.

     i.  Soliciting business or making contact with customers of *Homes & Land of Staten Island, Homes & Land of Brooklyn North, Homes & Land of Brooklyn South, and Homes & Land of Fairfield County and Surrounding Areas* until December 12, 2012; and

     j.  Holding themselves out as affiliated with HLA or *Homes & Land of Staten Island, Homes & Land of Brooklyn North, Homes & Land of Brooklyn South, and Homes & Land of Fairfield County and Surrounding Areas.*

2. As to Count VI and VII, award damages to HLA against Defendants VNF, V. Gomez, J. Gomez, and Scire in an amount to be determined at trial, which should include all monies due and owing under the franchise agreements.

3. As to all Counts, enter an Order that Defendants be required to immediately eliminate their advertising under the HLA Marks and/or trade dress or any other confusingly similar designations from all media, including, but not limited to, internet, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings and mass mailings, all at Defendants' cost;

4. That Defendants covenant not to compete be extended beyond December 12, 2012 for the period of time Defendants are found to have been violating the covenant not to compete;

5. That Defendants be required to file with the Court and serve upon Plaintiff's counsel within ten (10) days after the entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

6. An award of costs and expenses, including reasonable attorneys' fees, incurred by HLA in connection with this action as provided for by statute and the franchise agreements; and

7. Such other further relief as the Court deems just and proper.

Dated: December 27, 2011

                             Respectfully submitted,

                             Homer McMillan, II, Esq.
                             Florida Bar No. 0088219
                             Compass Law
                             P.O. Box 813

202-B Avenue A, NW
Carrabelle, FL 32322
Telephone: (850) 228-3459
Facsimile: (850) 687-2333
McMillan.Compass.Law@gmail.com

OF COUNSEL:
John F. Dienelt
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
Telephone: (202) 799-4270
Facsimile: (202) 799-5270
John.dienelt@dlapiper.com

*Attorneys for Plaintiff*
***HOMES & LAND AFFILIATES, LLC***

25

EAST\47680706.3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 27th, 2011, I filed the foregoing with the Clerk of the Court via hand-delivery.

_____

Homer McMillan, II, Esq.

26